# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR420-082 |
| | ) | |
| DARRYL KINLOCH, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDATION

Defendant Darryl Kinloch is indicted on a single count of possession of firearms by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). *See* doc. 1 (Indictment). Kinloch was arrested after a traffic stop on February 9, 2020. *See, e.g.,* doc. 27 at 1-2. He argues that any evidence collected as a result of the stop should be suppressed because, when he was ultimately arrested, officers lacked probable cause. *See id.* at 4-5. He also argues that evidence seized from his vehicle, including several firearms, *id.* at 3, should be suppressed because no exception to the warrant requirement applied and officers lacked probable cause. *Id.* at 5-8. The Government opposes. Doc. 34. Kinloch replied to the Government's opposition. Doc. 37. On January 11, 2021, the Court held

a hearing on Kinloch's motion.  Doc. 50.  The motion is, therefore, ripe for disposition and should be **DENIED**.

## I.      BACKGROUND

At the January 11 hearing, the Court heard testimony from Savannah Police Department Officer Devin O'Neil.  He stated that on February 9, 2020 he observed a vehicle traveling at a high rate of speed and in the wrong lane of traffic.  After briefly following the vehicle, which continued to travel at a high rate of speed, O'Neil initiated a traffic stop. As he was approaching the vehicle, he testified that he could see the driver, subsequently identified as Kinloch, "digging" in the passenger compartment.  O'Neil commanded Kinloch to shut off the vehicle and toss his keys out of the window.  Kinloch turned off the vehicle, but held the keys in his hand.  O'Neil approached the driver's open window and removed the keys from his hand.  He ordered Kinloch out of the vehicle and conducted a brief pat down to confirm Kinloch was unarmed.

O'Neil testified that, after removing Kinloch from the vehicle, he began to question him.  He testified that he could smell an odor of alcohol and that Kinloch seemed slightly disoriented and his speech was somewhat slurred.  Another officer, Officer Bishop, performed a field

sobriety test. Roughly contemporaneously, O'Neil testified that he received radio communication, *i.e.* a "be on the lookout" or "BOLO" broadcast, reporting a red sports car driving on the wrong side of the road. He responded that he believed the vehicle he stopped was the same as the subject of the broadcast.

O'Neil testified that Officer Bishop indicated that he intended to place Kinloch under arrest for driving under the influence. When the officers attempted to handcuff him, Kinloch resisted and a fight ensued. By the time Kinloch was subdued and placed in a patrol car, several other officers had arrived. Body-worn camera footage admitted at the hearing showed that Officer Bishop searched the car and removed several containers. When O'Neil approached Kinloch's vehicle again after the altercation, he smelled an odor of marijuana. He was emphatic that, when he smelled the marijuana, he never placed his head inside the car.[1] Upon a second search of the car, officers discovered the remains of a small cigar, or "blunt," that field-tested positive for marijuana and several

---

[1] Defense counsel closely questioned Officer O'Neil concerning the circumstances of his detection of the odor of marijuana. O'Neil's testimony that he did not detect an odor of marijuana until he returned to the window after Kinloch's arrest and that he never put his head into the car was consistent and entirely credible. The body-worn camera footage, while perhaps ambiguous, was not inconsistent with O'Neil's testimony.

firearms.  Kinloch was subsequently placed under arrest.  *See, e.g.,* doc. 27-2 at 4-5 (police report indicating charges of arrest).

## II.   ANALYSIS

Defendant contends that his Fourth Amendment rights were violated twice during the events that led to his arrest.  He contends, first, that his initial "arrest," which preceded the altercation, lacked probable cause.  *See* doc. 27 at 4-5.  He also contends that the subsequent search of the car, which was conducted without a warrant, does not fall into any recognized exception to the warrant requirement.  *Id.* at 5-8.  If either the arrest or the search violated the Fourth Amendment, he contends all evidence discovered in the search should be suppressed.  *Id.* at 8.  Given his argument that either violation is sufficient to mandate suppression of the evidence, the Court will consider them separately.

### A. Seizure and Arrest

Kinloch asserts two related, but independent, arguments concerning the propriety of his arrest.  Based on the chronology, the first argument is that "Officer O'Neil lacked the reasonable suspicion necessary to remove Mr. Kinloch from the vehicle and perform a pat-down for weapons."  Doc. 27 at 5 n. 2.  He also argues that the arrest,

after the conclusion of the field sobriety test but before the altercation, also lacked probable cause. *Id.* at 4-5. The Government argues that the initial stop was supported by O'Neil's observation of traffic violations. *See* doc. 34 at 7. Once lawfully stopped, it argues that Kinloch's removal from the vehicle and pat down did not violate the Fourth Amendment. *Id.* at 8. It also contends that Kinloch's arrest was proper based on various potential offenses, including driving under the influence. *Id.* at 6-7. The Government's arguments are correct.

The Eleventh Circuit has explained that "a traffic stop is a constitutional detention if it is justified by reasonable suspicion under *Terry* [*v. Ohio*] or probable cause to believe a traffic violation has occurred under *Whren v. United States*, [cit.]." *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003). Furthermore, "[r]easonable suspicion is determined from the totality of the circumstances and collective knowledge of the officers." *United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006). Officer O'Neil's fully credible testimony established that he had probable cause for the stop based on his observation of traffic violations. As the Government's brief points out, O'Neil's observations gave him probable cause to believe that the driver

5

was driving recklessly, in violation of O.C.G.A. § 40-6-390.  Doc. 34 at 6; *see also, e.g., United States v. Woods*, 385 F. App'x 914, 916 (11th Cir. 2010) ("We have held that there is probable cause to conduct a traffic stop where an officer observes a defendant commit a non-criminal traffic violation such as speeding or making an illegal lane change.").  Thus, even though Kinloch does not expressly challenge the propriety of the initial stop, the Government has shown that it was supported by probable cause.

The Government's further argument, that once O'Neil had properly stopped Kinloch, there was no Fourth Amendment violation in directing him out of the car, is also correct.  *See* doc. 34 at 8.  It is, at this point, well-established that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n. 6 (1977); *see also United States v. Burwell*, 763 F. App'x 840, 850 (11th Cir. 2019) ("[I] is well-settled that an officer may direct a driver to get out of the car during a lawful traffic stop." (citing *Mimms*, 434 U.S. at 111 n. 6).

6

The Court also agrees with the Government's contention that the pat down did not violate the Fourth Amendment.  It is worth noting, at the outset, that the parties' presentation of this argument is cursory, at best.  Kinloch's brief raises the issue only in a conclusory footnote.  *See* doc. 27 at 5 ("Counsel also submits that Officer O'Neil lacked the reasonable suspicion necessary to remove Mr. Kinloch from the vehicle and perform a pat-down for weapons." (citing *United States v. Bishop*, 940 F.3d 1242, 1249 (11th Cir. 2019)).  The Government's response, similarly, substantially brushes the issue aside.   *See* doc. 34 at 8 ("Additionally, officers are entitled to take reasonable action, such as a pat-down, based upon the circumstances to protect themselves during investigative detentions." (citing *United States v. Hastamorir*, 881 F.2d 1551, 1556-57 (11th Cir. 1989)).  The Government's authority for its justification of safety concerns, "based upon the circumstances," however, wholly ignores the more recent pronouncement, by a unanimous Supreme Court, that "to justify the pat down of the driver . . . during a traffic stop, 'just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.'" *United States v.*

7

*Packer*, 375 F. App's 976, 979 (11th Cir. 2010) (quoting *Arizona v. Johnson*, 555 U.S. 323, 327 (2009)).

Despite its apparent mischaracterization of the law, the Government does identify several facts, even if only briefly, that it contends supported the pat down. Specifically, the basis for the pat down was O'Neil's observation of Kinloch "violat[ing] various traffic laws, refus[ing] to drop the keys to the vehicle, [and] mov[ing] around in his vehicle . . . ." Doc. 34 at 8. The Eleventh Circuit, in the case cited by Kinloch, has recognized that "refusals to comply with . . . lawful orders, coupled with peculiar movements and tense behavior while seated in the [vehicle], support a finding of reasonable suspicion." *Bishop*, 940 F.3d at 1250. The Supreme Court has noted that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Finally, the Supreme Court has recognized "that traffic stops are especially fraught with danger to police officers." *Johnson*, 555 U.S. at 330 (internal quotation marks and citation omitted)). The Court should, therefore, find that the circumstances identified by the Government, and supported by O'Neil's testimony that his observation of Kinloch's movements in the vehicle

roused his suspicion of an attempt to conceal firearms or narcotics[2], provided reasonable suspicion to conduct the pat down. Accordingly, to the extent that he seeks to suppress evidence on the ground that his removal from the vehicle or pat down violated the Fourth Amendment, it should be denied.

Kinloch also argues that officers lacked probable cause to arrest him for driving under the influence of alcohol. *See* doc. 27 at 4. The Government refers to several offenses which might have supported Kinloch's arrest that, nevertheless, seem to miss the thrust of defendant's argument. *See* doc. 34 at 7-8. Kinloch contends that officers lacked probable cause to arrest him when they started to handcuff him after the field sobriety test. *See* doc. 27 at 4. Conduct that occurred *after* that—such as battery upon the officers, obstruction, or providing officers with a false name—cannot retroactively provide probable cause for the arrest.[3]

---

[2] O'Neil also testified that Kinloch's movements could have equally indicated that he was retrieving, rather than concealing, a weapon.

[3] Video recorded by Officer O'Neil's body-worn camera shows that, at the conclusion of the field sobriety test, Officer Bishop physically restrained Kinloch's hands, apparently attempting to handcuff him, and informed Kinloch he was "under arrest." The recording was admitted at the hearing as Exhibit 1. The Court assumes, without deciding, that Kinloch was arrested, for Fourth Amendment purposes, at that point. *See, e.g.,* 3 Wayne R. LaFave, Search & Seizure § 5.1(a) (6th ed. 2020) ("Resort to physical restraint is almost certain to result in a holding that an arrest had been

The Government is nevertheless correct that the traffic violations alone provided sufficient probable cause to arrest Kinloch.  *See* doc. 34 at 6 ("When the officers [sic] observed Defendant Kinloch's vehicle failing to maintain a single lane, speeding at high rates and travelling in the wrong lane of traffic, they were justified in initiating the traffic stop *and ultimately arresting him for those offenses.*" (emphasis added)).  An arrest is proper if there are objective facts establishing probable cause for that arrest, even if the arresting officer stated that he was arresting the defendant for another offense for which he lacked probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (an officer's "subjective reason for making [an] arrest need not be the criminal offense as to which the known facts provide probable cause."); *Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir. 2002) ("[W]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest."); *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir.

---

made . . .").  Thus, the altercation and false name, which all occurred later, could not provide probable cause for the original arrest.

2016) ("[I]f the facts support probable cause to arrest for one offense, the arrest is lawful even if the officer invoked, as a basis for the arrest, a different offense as to which probable cause was lacking.").  O'Neil's credible testimony established his observation of the traffic violations, which provided sufficient probable cause for his subsequent arrest.  The Court does not need to determine, therefore, whether the ambiguous results of the field sobriety test, *see* doc. 27 at 4, provided independent probable cause.

Accordingly, to the extent that Kinloch's suppression motion contends that officers violated the Fourth Amendment by either (1) removing him from his vehicle after a valid traffic stop, (2) patting him down for weapons, or (3) arresting him at the conclusion of the field sobriety test, his motion should be **DENIED**.  Doc. 27.  The Government presented sufficient evidence to show that Officer O'Neil had probable cause to believe that Kinloch had committed traffic violations.  That probable cause was sufficient to justify both the initial stop and the subsequent arrest, notwithstanding the possible implication that the arrest was solely based on driving under the influence of alcohol.

11

Moreover, Kinloch's behavior after he was stopped created reasonable suspicion sufficient to justify a pat down.

## B. Vehicle Search

In addition to challenging the seizures that preceded, and precipitated, the search of his vehicle that revealed the firearms, Kinloch also challenges the basis for that search. *See* doc. 27 at 5. It is undisputed that officers did not have a warrant to search the passenger compartment of the vehicle. *See id.* It is also undisputed that whether the warrantless search violated the Fourth Amendment, therefore, depends upon whether any exception to that requirement applies. *Id.* The Government argues that two exceptions govern the two searches that occurred; the first search by Officer Bishop, which did not reveal the firearms, was justified as a search incident to Kinloch's arrest for driving under the influence. *See* doc. 34 at 9-10. Officer O'Neil's search, which did reveal the firearms, was justified under the so-called "automobile exception," supported by his detection of the odor of marijuana through the vehicle's open window. *Id.* at 12-13.

The law is well-settled that law enforcement officers who lawfully stop a motor vehicle may proceed to conduct a warrantless search of that

vehicle where they have probable cause to believe that it contains evidence of criminal activity. *Carroll v. United States*, 267 U.S. 132, 153 (1925). This "automobile exception" to the Fourth Amendment "does not have a separate exigency requirement: 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.'" *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999) (*per curiam*) (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (*per curiam*)). Indeed, "'when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody.'" *United States v. Parrado*, 911 F.2d 1567, 1571 (11th Cir. 1990) (quoting *Michigan v. Thomas*, 458 U.S. 259, 261 (1982)). Probable cause deals with probabilities, "'not hard certainties.'" *Texas v. Brown*, 460 U.S. 730, 742 (1983) (citation omitted). Nor does the level of probability impose a "more likely true than false" standard. *Id.*; *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975) (the probable cause determination "does not require the resolution of conflicting evidence that reasonable-doubt or even a preponderance standard

demands"); *United States v. Garcia*, 179 F.3d 265, 268 (5th Cir. 1999) ("the requisite fair probability is something more than bare suspicion but need not reach the fifty percent mark"); *United States v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987) (probable cause does not require a more-probable-than-not showing).   Rather, probable cause requires only that the available facts permit a person of "reasonable caution" to reach the "common-sense" conclusion, *Brown*, 460 U.S. at 742, that there is a "fair probability" evidence of a crime is located in the place to be searched, *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983), *United States v. Lewis*, 2016 WL 7668450 at * 2 (S.D. Ga. Nov. 21, 2016).

Even in the absence of probable cause, however, the Supreme Court has held that it is permissible for officers to conduct a search of a vehicle incident to the arrest of its occupants where "it is *reasonable to believe* the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351 (2009) (emphasis added).  While the Court did not flesh out the reasonable-to-believe standard, a number of appellate courts have concluded that it appears to require a lesser quantum of suspicion than probable cause, *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014); *United States v. Donahue*, 764 F.3d 293, 299 n. 6 (3d Cir.

2014); *United States v. Rogers*, 656 F.3d 1023, 1028 n. 5 (9th Cir. 2011),
and "probably is akin to the 'reasonable suspicion' standard required to
justify a *Terry* search." *United States v. Vinton*, 594 F.3d 14, 25 (D.C.
Cir. 2010). Importantly, "[a] police officer's subjective reasons for a
search do not control the legal justification for his actions, as long as
objective circumstances justify the search." *United States v. Lanzon*, 639
F.3d 1293, 1300 (11th Cir. 2011).

Courts have held that after an arrest for driving under the
influence, a search, albeit perhaps a limited search, of a vehicle for
intoxicants is proper under *Gant*. *See, e.g., United States v. Grote*, 408 F.
App'x 90, 91 (9th Cir. 2011) (affirming propriety of a vehicle search, under
*Gant*, because "[i]t was reasonable to believe that the car might contain
one or more bottles of open liquor or drugs."); *see also, e.g., Thomas v.
Plummer*, 489 F. App'x 116, 121-22 (6th Cir. 2012) (discussing two
approaches to *Gant*, but explaining under both that arrests for driving
under the influence, officers generally have a sufficient reasonable belief
to search the passenger compartment for evidence of that crime).[4]

---

[4] Defendant's reliance on the Eastern District of Tennessee's analysis of *Gant's*
application to a DUI arrest is plausible, if not compelling. He correctly notes that the
court found that "it is not reasonable to believe that evidence of DUI is inside the
passenger compartment of a vehicle based solely upon the nature of the charge or

Although Officer Bishop did not testify at the hearing, review of the recording from his body-worn camera shows that his initial search was limited to containers in the passenger compartment of Kinloch's car that might contain alcohol.[5]  *See* Ex. 2 at 22:11-24:19.  Thus, that brief initial search was justified as incident to Kinloch's arrest for DUI, under *Gant*.

The second search is, conceptually, much more straightforward. The Government contends that, once Officer O'Neil detected the smell of marijuana, officers had probable cause to search the vehicle under the automobile exception.  Doc. 34 at 12-13.  Kinloch does not argue that detection of the smell of marijuana is insufficient to establish probable cause.  *See* doc. 37 at 2-3.  Rather, he contends that the Fourth

---

existence of evidence that the vehicle's driver is intoxicated." *United States v. Regan*, 713 F. Supp. 2d 724, 733 (E.D. Tenn. 2010).  After the court decided *Regan*, however, the Sixth Circuit indicated, albeit in dicta, that under both prominent interpretations of *Gant*, arrest for DUI generally provides sufficient reason for officers to believe that evidence related to that crime will be in the car.  *Thomas*, 489 F. App'x at 121-22.  In the absence of binding authority on the question, the approach of the Courts of Appeals, cited above, simply carry more weight than the earlier district court opinion. The Court also notes that lower courts have also come to conclusions similar to those expressed by the Courts of Appeals.  *See, e.g., United States v. Valandra*, 2011 WL 3439930, at * 4 n. 23 (collecting cases).

[5] The recording also captured Bishop's statement, immediately prior to commencing his search, that he intended to "search [the vehicle] related to DUI."  Ex. 2 at 22:11-12.

Amendment violation occurred when, allegedly, Officer O'Neil put his head through the car's open window to detect the odor. *Id.*

The parties' agreement that the smell of marijuana provides probable cause for a search of the vehicle is consistent with the clearly-established law in this Circuit. The Eleventh Circuit has held that detection of the odor of burnt marijuana establishes probable cause for a search or seizure. *See Merricks v. Adkinson*, 785 F.3d 553, 560 n. 3 (11th Cir. 2015) ("[T]he smell of burnt marijuana emanating from a vehicle is sufficient probable cause to search a vehicle." (citing *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (*en banc*)); *see also United States v. Johnson*, 2007 WL 2874303, at * 3 (S.D. Ga. Sept. 26, 2007) ("it is clearly established that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search." (quotes and cite omitted)).

The issue, then, is whether a Fourth Amendment violation had already occurred when O'Neil detected the smell of marijuana. Kinloch contends that video footage from O'Neil's body worn camera shows that he put his head into the car's open window before he announces he smelled marijuana. *See* doc. 27 at 7. In his testimony, however, O'Neil

consistently and emphatically denied that he ever put his head into the window.  Defense counsel conceded at the hearing that if the Court found that testimony credible, then the search was permissible.  The Court finds Officer O'Neil's testimony fully credible, and while the position of the camera reflected by the recording is suggestive, it is simply not sufficient to contradict that testimony.

Accordingly, to the extent that Kinloch's motion contends that either Officer Bishop's original search or the second search initiated after Officer O'Neil detected the odor of marijuana violated the Fourth Amendment, it should be **DENIED**.  Officer Bishop's original search was based, objectively, on a reasonable belief that evidence of one of the offenses for which Kinloch was arrested, driving under the influence, would be found in the vehicle.  The subsequent search was permissible under the automobile exception to the warrant requirement, based on the probable cause established by Officer O'Neil's detection of the smell of marijuana.

## III.  CONCLUSION

The initial stop of Kinloch's vehicle was valid, based, at least, on Officer O'Neil's observation of traffic infractions.  Once the stop occurred,

no further quantum of suspicion was necessary for O'Neil to request Kinloch to exit his vehicle.  Moreover, there was a sufficient basis for O'Neil to conduct a brief pat down to assure himself that Kinloch was not armed.  There was also sufficient probable cause, objectively and notwithstanding the bases identified by the officers involved, to justify Kinloch's arrest.  Once he was arrested, Officer Bishop had sufficient grounds to conduct a brief search for intoxicants, incident to his arrest. Finally, the Court fully credits Officer O'Neil's consistent and emphatic testimony that the smelled the odor of marijuana emanating from the car and that he did not put his head into the car to detect it.  Based on his detection of the odor of marijuana, he had probable cause to conduct a full search of the vehicle.  Therefore, the Government has borne its burden to justify the warrantless searches and seizures Kinloch challenges.

Accordingly, Kinloch's suppression motion should be **DENIED**. Doc. 27.  This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy

on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this <u>31st</u> day of March, 2021.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA