UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | CR420-082 |
| DARRYL KINLOCH, | ) ) ) | |
| Defendant | ) | |

## ORDER

The undersigned recommended that defendant Darryl Kinloch's Motion to Suppress, doc. 27, be denied. Doc. 65. Kinloch filed an objection to the Report and Recommendation (R&R). Doc. 72. Because an issue raised in the objection implicates the accuracy of the R&R's analysis, but is insufficient to establish that analysis' inaccuracy, the Court **VACATES** the R&R, doc. 65, and will hear further from the parties concerning the legal issue raised by the objection.

The circumstances of Kinloch's arrest on February 9, 2020, and the searches that followed it, are somewhat complicated. Defendant's objection does not take issue with the Court's presentation of the facts, *see* doc. 72, but a brief recitation will clarify the legal issue raised in the objection. The events leading to Kinloch's prosecution for possession of

firearms by a prohibited person, *see* doc. 1, began when Savannah Police Department Officer Devin O'Neil observed a vehicle traveling at a high rate of speed and in the wrong lane of traffic, doc. 65 at 2. O'Neil conducted a traffic stop, asked the driver, subsequently identified as defendant Kinloch, to step out of the vehicle, and began to question him. *Id.* A second officer, Officer Bishop, arrived and conducted a field sobriety test. *Id.* at 2-3. At the end of that test, the officers attempted to arrest Kinloch. *Id.* at 3. Kinloch resisted and a fight ensued. *Id.* Kinloch was ultimately subdued and confined in a patrol car. *Id.* While he was confined, officers conducted two searches of his car. *Id.* at 3. First, Officer Bishop conducted a search, which the Government contends was pursuant to Kinloch's arrest for DUI. *See* doc. 34 at 10. Then, Officer O'Neil searched the car, allegedly based on probable cause arising from his detection of the odor of marijuana. *See id.* at 11-12.

Kinloch's original motion argued that he was illegally seized when he was arrested for DUI because officers lacked probable cause to arrest him on that charge. *See* doc. 27 at 4-5. He also argued that Bishop's search violated the Fourth Amendment because he lacked a "sufficient particularized reason to believe that evidence of driving under the

2

influence of alcohol, the arresting offense, was present in the vehicle," precluding application of the search-incident-to-arrest exception to the warrant requirement, pursuant to *Arizona v. Gant*, 556 U.S. 332 (2009). *Id.* at 5-6. He then argued, independently, that O'Neil's search violated the Fourth Amendment because it lacked probable cause. *See id.* at 6-8 ("Even if Officer Bishop's initial search was permissible under *Gant*, the subsequent warrantless search conducted by Officer O'Neil cannot be justified under the automobile exception [to the warrant requirement].").

The Report and Recommendation addressed the arguments challenging the arrest and search separately. First, it recommended that the Court find that Kinloch's arrest did not violate the Fourth Amendment, notwithstanding his argument that officers lacked probable cause to arrest him for DUI, because they had probable cause to arrest him for the traffic offenses. *See* doc. 65 at 9-11. The Report and Recommendation also recommended that the Court find Officer Bishop's initial search was proper under *Gant*, rejecting defendant's argument that an arrest for DUI does not, alone, support the reasonable belief that evidence of that offense will be found in the vehicle. *See id.* at 15-16, 15 n. 4.

Kinloch objects that the recommendation that Bishop's initial search be upheld, under *Gant*, as incident to Kinloch's arrest for DUI is inconsistent with the R&R's declining to determine that officers had probable cause to arrest him for that offense. Doc. 72 at 2-3. The linchpin of that argument is Kinloch's contention that "the search cannot be upheld as a search incident to arrest for DUI where probable cause to arrest for DUI is lacking." *Id.* at 2. That assertion is made without any citation to legal authority.[1]  *Id.*; *see also* S.D. Ga. L. Crim. R. 12.1 ("[E]very motion filed in a criminal proceeding shall be accompanied by a memorandum of law *citing supporting authorities*." (emphasis added)). The objection, therefore, *suggests* a line of argument that the Report and Recommendation did not fully consider. In the absence of any supporting legal authority, however, the validity of the objection is, at best, speculative.

Kinloch's ultimate arrest, which preceded both searches, was based on numerous offenses, including DUI less safe. *See, e.g.,* doc. 27-2 at 4-5 (listing offenses of arrest as: "DUI less safe[,] Too fast for conditions[,]

---

[1] The only legal authority cited in the relevant portion of Kinloch's objection is a foreshortened and wholly general citation to *Gant*. *See* doc. 72 at 2 (citing "556 U.S. 332").

4

Improper lane use[,] Felony obstruction of an officer[,] Simple battery on a peace officer[,] Felon in possession of a firearm x 2[,] Possession of a controlled substance[.]"). The Report and Recommendation recommended that the Court find that his initial seizure, when officers attempted to place him in handcuffs after the field sobriety test, was supported by probable cause based on *at least* the traffic offenses. Doc. 65 at 10-11. His objection does, however, correctly note that the Report and Recommendation expressly declined to find that the Government had established probable cause for his arrest for DUI, based on "the [allegedly] ambiguous results of the field sobriety test."[2]

The Report and Recommendation, then, declined to find that Kinloch's arrest for DUI was based upon probable cause because it found that his arrest was based upon at least one offense for which there was

---

[2] Kinloch's objection contends that "the fact that the results of the field sobriety tests were 'ambiguous' demonstrates that it was not reasonable for Officer Bishop to believe that the vehicle contained evidence of DUI." Doc. 72 at 3. However, the Report and Recommendation's characterization of those results as "ambiguous" cites to Kinloch's own brief. *See* doc. 65 at 11 (citing doc. 27 at 4). While perhaps not stated clearly, the Court's intent in mentioning the "ambiguous" results was merely to acknowledge that Kinloch challenged whether those results supported probable cause to arrest him for DUI, not to comment on their quality or character. Contrary to Kinloch's suggestion, then, the Report and Recommendation did no more than decline to consider whether officers had probable cause to arrest Kinloch for DUI; it certainly does not "admit[ ] that the results of the field sobriety test were 'ambiguous.'" Doc. 72 at 2.

5

probable cause. *See* doc. 65 at 10-11. It then recommended that the Court find that Officer Bishop's initial, and limited, search of the vehicle's passenger compartment for evidence of intoxicants was justified incident to Kinloch's arrest for DUI. *Id.* at 14-16. The R&R does not, then, find positively that "probable cause to arrest for DUI is lacking." Doc. 72 at 2.

In *Gant*, the Supreme Court explained the contours of its jurisprudence, established principally in *Chimel v. California*, 295 U.S. 752 (1969) and *New York v. Belton*, 453 U.S. 454 (1981), concerning searches incident to an arrest as applied to vehicle searches. *See Gant*, 556 U.S. 335. Reading *Belton* more narrowly than some courts had, the Supreme Court held that police are authorized to search a vehicle, incident to a recent occupant's arrest, "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," and "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* at 343 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J. concurring)). The Court noted that "[i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable

basis to believe that the vehicle contains relevant evidence. [Cit.] But in others, including *Belton* and *Thornton*, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Id.* (citations omitted).

As the R&R explains, Kinloch's arrest was valid based on officers' probable cause to believe he had committed traffic offenses, and he was ultimately arrested based, in part, on those traffic charges. *See* doc. 65 at 9-11. Kinloch does not challenge that analysis in his objection. *See generally* doc. 72. Nor does he challenge that his conduct subsequent to the officers' attempt to handcuff him, *i.e.* his obstruction and battery, provided additional probable cause for his ultimate arrest, even if that conduct could not justify the initial seizure. *See generally* doc. 27, doc. 37, doc. 72. Kinloch does not dispute, then, that his arrest was valid. *See* doc. 65 at 10 (citing, *inter alia.*, *Lee v. Ferraro*, 284 F.3d 1188, 1195-96 (11th Cir. 2002)).

Despite apparently conceding the validity of his arrest, generally, he disputes that officers had probable cause to arrest him for DUI in particular. *See* doc. 27 at 2; doc. 72 at 2-3. While the R&R referred to Officer O'Neil's testimony that he observed indicia of intoxication, *see* doc.

7

65 at 2, as discussed above, it ultimately withheld determination of the probable cause basis to arrest Kinloch for DUI, *id.* at 11.[3] However, the R&R explained—and Kinloch's reply brief concedes, *see* doc. 37, at 1-2 (conceding that "it is true that courts have generally determined that the 'reasonable to believe' standard is lesser than a 'probable cause' standard," but arguing it is higher than *Terry*'s "reasonable suspicion" standard)—that *Gant*'s "reasonable to believe" standard "require[s] a lesser quantum of suspicion than probable cause." *See* doc. 65 at 14-14. Kinloch, therefore, concedes both that his arrest, on at least some charge,

---

[3] Although the Court declined to find that the Government had established probable cause existed to arrest Kinloch for DUI, Officer O'Neil testified at the hearing that when he removed Kinloch from the vehicle, but before Officer Bishop performed the field sobriety test, O'Neil "smell[ed] an odor of alcohol," and that Kinloch "seemed a little out of it," and Kinloch's speech "was a little slurred." Doc. 60 at 14. Given his prior observation of Kinloch's traffic infractions, the Court might have concluded that officers had probable cause to arrest Kinloch for DUI less safe. *See, e.g., Cann-Hanson v. State*, 478 S.E.2d 460, 461 (Ga. Ct. App. 1996) ("Even in the absence of the field sobriety tests, the officer's observation that [defendant] had bloodshot, watery eyes and exuded an odor of alcohol was sufficient to show probable cause to arrest him for driving under the influence."); *but see Harkleroad v. State*, 732 S.E.2d 278, 282 (Ga. Ct. App. 2012) ("speeding, . . . bloodshot eyes, and the odor of alcohol coming from the car gave the officer reasonable and articulable suspicion to detain [defendant] for the purpose of administering [a field sobriety test]," but probable cause arose when the defendant failed the field sobriety test). Given the contradictory evidence cited by Kinloch, *see, e.g.,* doc. 72 at 2-3, and the undisputed basis for Kinloch's arrest, the Court remains convinced that a definitive probable cause analysis is not warranted. However, those facts may be relevant to whether officers had "a particularized reason to believe that the vehicle contained evidence of DUI," *see* doc. 37 at 2, notwithstanding that the Court does not explicitly find that they had probable cause to arrest on that charge.

was valid and that *Gant* permits searches based on less than probable cause.

Given those concessions, Kinloch's objection fails to address the R&R's contents squarely. It does not vindicate its legal contention that a *Gant* search "is permissible only if there is probable cause for the arrest on which the search is based." Doc. 72 at 2. The distinction between the suspicion necessary to support a warrantless arrest, *i.e.* probable cause, and the suspicion necessary to support a search pursuant to that arrest, *i.e.* "reasonable belief," therefore, seems to create precisely the possibility that he objects to: that officers might lack probable cause to arrest a defendant for a particular offense, but might still have a "reasonable belief"[4] necessary to support a search under *Gant*.

---

[4] The objection's assertion that "the fact that the results of the field sobriety tests were 'ambiguous' demonstrates that it was not reasonable for Officer Bishop to believe that the vehicle contained evidence of DUI," doc. 72 at 3, also seems overstated. The Court cited to several opinions by United States Courts of Appeals finding that arrest for DUI is sufficient to justify a search of a vehicle, under *Gant*. *See* doc. 65 at 15 (citing *Thomas v. Pulmmer*, 489 F. App'x 116, 121-22 (6th Cir. 2012)). Kinloch does not dispute that he was arrested for DUI. *See* doc. 27 at 4, 6. Even assuming that the indications that Kinloch was driving under the influence of an intoxicant never rose to the level of probable cause necessary to justify his *arrest* on that charge, those indications might have supplied the lower quantum of evidence required to justify the *search*. *Se* doc. 65 at 14 (discussing the "lesser quantum of suspicion" necessary to justify a search incident to arrest, under *Gant*, and collecting cases). The question, then is whether justifying a search incident to arrest, under *Gant*, requires the Government to prove that officers had probable cause to arrest the

Moreover, in at least some circumstances, searches premised on officers' mistakes have nevertheless been found reasonable under the Fourth Amendment. "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection," including mistakes based on both misunderstanding of the facts and applicable law. *Heien v. North Carolina*, 574 U.S. 54, 61 (2014) (internal quotation marks and citation omitted). Even assuming, then, that the Court positively determined that officers lacked probable cause to arrest Kinloch for DUI, it does not *necessarily* follow that "the search cannot be upheld as a search incident to arrest for DUI." Doc. 72 at 2.

In order to ensure that the Court's analysis of Officer Bishop's search of Kinloch's car for evidence of DUI is as thorough as possible, the Court **DIRECTS** the parties to submit further briefing. The parties supplemental briefs should address the legal question raised by the recommendation: where a defendant is arrested without a warrant based on multiple charges, and there is a probable-cause basis to arrest on at

---

defendant on the offense of arrest of which "it is reasonable to believe the vehicle contains evidence." *Gant*, 556 U.S. at 351.

least one of those charges, whether *Gant* permits a search for evidence of the other charges, and, if so, (1) what basis is required to justify the search, *e.g.* probable cause, reasonable belief, reasonable suspicion, etc., and (2) whether the Government has proven that Officer Bishop's search was justified under the appropriate standard.

As the movant on the underlying suppression motion, Kinloch is **DIRECTED** to submit his supplemental brief no later than June 15, 2021. The Government is **DIRECTED** to submit any response brief no later than June 29, 2021. Reply briefs may be submitted pursuant to the Court's Local Rules. *See* S.D. Ga. L. Civ. R. 7.6; S.D. Ga. L. Crim. R. 1.1.

**SO ORDERED**, this 1st day of June, 2021.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA